UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:18-CV-0073-EBA

JACOB ALBERT SCOTT GRANT,                                                            PLAINTIFF,

V.                 **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,                                               DEFENDANT.

Jacob Grant seeks judicial review of an opinion denying his applications for Title II disability insurance benefits and Title XVI supplemental security income. Under 42 U.S.C. §§ 405(g), 1383(c)(3), this Court may review the record for the limited purpose of inquiring into whether the Administrative Law Judge's [ALJ's] findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)); *Sias v. Secretary*, 861 F.2d 475 (6th Cir. 1988). In conducting its review, a court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman*, 693 F.3d at 714. Even if the Court were to resolve the factual issues differently, the ALJ's decision must

stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

In this action, Grant contends that the ALJ erred when finding some impairments non-severe, and further argues that the ALJ failed to give proper weight to the opinions of an Advance Practice Registered Nurse. Finally, Grant argues that the ALJ erred by failing to consider evidence that he requires a service dog. The matter is now before the Court on cross-motions for summary judgment., and for the reasons that follow, the Commissioner's motion will be granted, and Grant's motion will be denied.

## PROCEDURAL HISTORY

In determining whether Grant was disabled within the meaning of the Social Security Act, the Commissioner in this case used a five-step sequential evaluation process. 20 C.F.R. § 404.1520. That process is described as follows:

> First, the Commissioner determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If not, then the Commissioner considers whether the claimant has a severe medical impairment. *Id.* § 404.1520(a)(4)(ii). If the claimant has a severe medical impairment, the Commissioner proceeds to the third step and determines whether the claimant's impairment meets or equals one of the impairments listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, the Commissioner then assesses the claimant's "residual functional capacity" and determines whether she can perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). Finally, at the fifth step, if the claimant cannot perform her past relevant work, the Commissioner considers the claimant's "residual functional capacity," age, education, and work experience to determine whether she can make an adjustment to other work. *Id.* § 404.1520(a)(4)(v). At steps one through four of the sequential analysis, the claimant bears the burden of proof, but at step five, "the burden shifts to the Commissioner ... to show 'a significant number of jobs in the economy that accommodate the claimant's residual functional capacity ... and vocational profile.

*Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 855 (6th Cir. 2010) (quoting *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008)).

Here, the ALJ determined that Grant was not engaged in substantial gainful activity under step one and proceeded to determine that Grant had the severe medical impairments of HIV and headaches, under step two. [Page ID: 113]. In addition, the ALJ found that Grant had medically determinable mental impairments of ADHD and anxiety but found that they were non-severe because they did not cause more than minimal limitation in his ability to perform basic mental work activities. [Page ID: 113]. Then, at step three in the sequential evaluation process, the ALJ determined that Grant's impairments did not meet or equal one of the impairments listed in the regulations. In moving on to fashion an appropriate residual functional capacity for Grant, the ALJ considered his severe impairments and considered his non-severe impairments, for which he assigned some minor limitations. [Page ID: 118].

The first issue before the Court, as briefed by the parties, is whether the ALJ committed error when finding that Grant's mental impairments of ADHD and anxiety, although medically determinable, were non-severe. The second issue is whether the ALJ gave proper weight to the opinions of Nurse Amanda Bell when he determined that Grant had only mild limitations secondary to non-severe mental impairments, and when fashioning a residual functional capacity. Grant's final argument of error is that the ALJ failed to discuss any of the evidence demonstrating his need for a service dog to manage his mental impairments. [Page ID: 738].

I

Central to all arguments raised in this case are the opinions of Amanda Bell, an Advanced Practice Registered Nurse, and how the ALJ weighed her opinions. Nurse Amanda Bell saw Grant on one occasion and prepared an assessment to be considered as evidence in the case. Grant contends that nurse Bell's opinions demonstrated that his impairments resulted in more than minimal work-related limitations. However, for the following reasons, the ALJ considered nurse

3

Bell's opinions, gave them appropriate weight, and supported his conclusions about Grant's limitations based upon objective evidence in the record.

As the ALJ correctly noted, nurse Bell is not an acceptable medical source. The category of "acceptable medical source" includes an Advanced Practice Registered Nurse" "for impairments within his or her licensed scope of practice (only with respect to claims filed on or after March 27, 2017)". 20 C.F.R. 416.902(a)(7). In the instant case, Grant's claim was filed on June 28, 2016. As a result, nurse Bell is not considered an acceptable medical source for purposes of evaluating his claim. However, her opinions must still be considered because in considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3) ). The opinions of one-time consultative examiners such as Nurse Bell are not subject to the so-called "treating physician rule," which requires ALJs to give greater deference to the opinions of treating physicians and, although an ALJ is not bound by findings made by non-treating physicians, the ALJ must evaluate a consultative examiner's opinion using the relevant factors in 20 C.F.R. 416.927(c)(1)-(6), the same factors used to analyze the opinion of a treating physician. *See id.* 416.927(c). These factors include whether an examination was performed, the consistency of the opinion with the record as a whole, how well the opinion is supported, the specialization of the medical professional, and other factors such as how well the medical professional understands the disability rules and their familiarity with the claimant's medical record. *Id.* "Unless a treating source's opinion is given controlling weight," the ALJ "must explain in the decision the weight given to the opinions of ... nontreating sources." *Id.* § 416.927(e)(2)(ii); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 837 n.8 (6th Cir. 2016) (citing 20 C.F.R. § 404.1527(c) & (e)(2)(ii),

which are the relevant regulations on the treating physician issue for disability insurance benefits claims); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency." (citation omitted) ). Nevertheless, the ALJ is not required to discuss every factor in detail or do anything more than consider the factors and explain the weight assigned to the opinion. 20 C.F.R. § 416.927(c), (e)(2)(ii).

Grant contends that the ALJ erred in failing to find that he had severe mental impairments, arguing that the standard to make such a finding is *de minimis*. To begin, according to the law in the Sixth Circuit, an impairment is not severe in cases where it results in only a slight abnormality that minimally affects work, regardless of the claimant's age, education and experience. Examples of basic work activities are listed in 20 C.F.R. § 416.921 and include "understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." A claim must meet the *de minimis* standard to survive past step two of the sequential evaluation process. *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988). However, meeting the *de minimis* standard does not mandate a finding of a severe impairment, as "an overly stringent interpretation of the severity requirement would violate the statutory standard for disability by precluding administrative determination of the crucial statutory question: whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." *Farris V. Secretary of Health and Human Services*, 773 F.2d 85, 89 (6th Cir. 1985).

The record in this matter supports the ALJ's finding that Grant suffered only mild, non-severe mental impairments. The Claimant contends that the ALJ failed to note that APRN Bell had a specialty in psychiatry, that Nurse Bell's opinion was based upon multiple actual examinations, and the ALJ did not note the treating relationship between Nurse Bell and Grant. [R. 17]. However, these arguments are contrary to the record. The record reflects that although Grant was seen at Centerstone for psychiatric services on a number of occasions [R. 12-1; Ex 6F, 11F, 15F], he was seen on only one occasion by Nurse Bell, after which she completed an assessment of his condition [R. 12-1, Ex. 12F]. The ALJ discounts the opinions of Nurse Bell as they are based solely upon subjective complaints by Grant that are not adequately supported by the record. A review of the records generated by Bell and others at Centerstone during his visits reveals no objective evidence, but only subjective statements by Grant, including his self-reported history of angry outbursts; anger issues; mood swings; believes he has ADHD, but was not diagnosed as a child; and forgetfulness. In addition, he related that he did not like taking direction from others and was anxious all the time. He reported relationship issues with his partner, a good appetite, recent weight loss, but enjoyed outdoor activities including camping and riding 4-wheelers. He presented to Nurse Bell as neatly dressed, articulate, possessed of normal affect, exhibited a normal thought process with no history of hallucinations or distortions. Finally, he was alert and fully oriented with no memory attention or concentration deficits. In contrast, the ALJ relied on the opinions of Shon Goodwin, M.S., LPP, who conducted an evaluation of Grant on 10/21/2016. The ALJ noted that Grant related to Goodwin that he was largely in mental health counseling in order to continue to get his medication. [Page ID: 608]. Psychological testing indicated that Grant attempted to exaggerate his cognitive and psychological difficulties, with results being comparable to what would be expected from someone diagnosed with a brain injury

or other severe clinical problems. However the test results indicated that Grant was fully oriented to time, place, person, and situation; he had adequate immediate, recent and remote memory; his ability to concentrate was grossly intact and unimpaired and his ability to engage in abstract thinking and insight was intact; and finally, that he demonstrated adequate personal and global judgment. [Page ID: 608]. The examiner did believe Grant had mild-to-moderate anxiety, but believed this diagnosis was in doubt due to his suspected malingering in testing. [Page ID: 608]. In addition, the examiner expressed that the felt Grant was capable of sustained attention for simple repetitive tasks, relating to others in the workplace, adapting to a work environment, and tolerating stress and pressure associated with day-to-day work activity. [Page ID: 607].

Therefore, the record in the case reveals that the ALJ employed the proper standard in finding that Grant suffered from mild, though non-severe mental impairments. In addition, the ALJ properly articulated his reasoning, relying on objective evidence of record to support his conclusions. However, even assuming, without finding, that the ALJ erred when finding Grant's mental impairments non-severe, as Grant contends, this error is harmless because the ALJ considered all of Grant's impairments, both severe and non-severe, when fashioning the appropriate residual functional capacity. "When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all an individual's impairments, even those that are not 'severe.' " Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." *Fisk v. Astrue*, 253 F.App'x 580, 583 (6th Cir. 2007)(citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). A review of the record in this case reveals that the ALJ did in fact consider Grant's non-severe mental impairments in fashioning

a residual functional capacity, and any alleged error in failing to find his mental impairments to be severe, is moot.

In addressing his mental impairments, and how they factored into the the RFC, the ALJ stated that "[h]e should have some minor limitations for his non-severe psychological impairments, again largely based upon his complaints giving him some benefit of a doubt. Further limitation is not warranted by the record." [Page ID: 118]. In Grant's case, the ALJ determined the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he may frequently climb ramps/stairs, and frequently stoop, kneel, crawl and crouch. He cannot climb ladders, ropes, or scaffolds. He should have no exposure to unprotected heights, and no more than frequent exposure to vibration and workplace hazards such as machinery with moving parts that fail to stop when human contact is lost. He is able to tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition. It is expected he would be off task no more than 10 percent of the workday in addition to normally scheduled breaks, and miss no more than 1 day of work per month. He should be allowed to transition from a seated position to stand/walking position every 30 minutes for 2-3 minutes while at the workstation, and similarly transition from a stand/walk to a seated position every 30 minutes for 2-3 minutes while at the workstation. He should do no fast-paced production line, assembly line, or quota driven work.

[Page ID: 116].

"Although medical sources, including the treating physician, are used to provide evidence on the nature and severity of impairments, the final responsibility for deciding a claimant's RFC is reserved to the Commissioner." *Brown v. Comm'r of Soc. Sec.,* No. 5:03CV2246, 2007 WL 4556678, at *6 (N.D.Ohio Dec.20, 2007) (emphasis in original); 20 C.F.R. § 416.927(e)(2). The determination of the claimant's RFC lies within the strict purview of the ALJ. 20 C.F.R. § 416.927(e)(2). Therefore, the ALJ's RFC determination will be upheld by the reviewing court so long as it is supported by substantial evidence. *Brown,* 2007 WL 4556678, at *6." *Belville v.*

*Astrue*, 2011 WL 3922276 at *3 N.D. United States District Court, Ohio, Eastern Division, 1/19/2011. ""A claimant's residual functional capacity is the most that he or she can do despite his or her impairments." *Khudhair v. Colvin*, No. 3:14-CV-581-DW, 2015 WL 2359575, at *10 (W.D. Ky. May 15, 2015) (citation omitted). When making the RFC determination, the ALJ must consider "the claimant's physical abilities, mental abilities, other abilities affected by impairments, and total limiting effects." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 465 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(b)-(e)). The ALJ will also consider descriptions of limitations as provided by the claimant, family members, neighbors, friends, and other relevant persons. 20 C.F.R. § 404.15459(a)(3)."

> The ALJ explained the RFC in Grant's case by stating, in part:
>
> The undersigned has specifically accommodated the claimant's medically established physical limitations by limiting him to only a limited range of light work, including limiting his postural activities and exposure to environmental conditions that would potentially exacerbate his symptoms, as well as allowing for a sit/stand option at 30 minute intervals due to residual side effects from his HIV antiviral medications giving the claimant every benefit of the doubt on this allegation. The undersigned has also accommodated the claimant on this condition by limiting his work pace by precluding any fast-paced production line, assembly line, or quota driven work, and also by allowing him to be off task during the workday in addition to normally scheduled breaks, and further allowing for an absence during the work month.

[Page ID 119].

Therefore, because the record reveals that the ALJ did not err in finding Grant's mental impairments non-severe, and further considered his mental limitations, although mild, in fashioning an RFC, the ALJ's decision was not in error, it is supported by objective medical evidence of record.

Grant's final argument of error is that the ALJ failed to discuss any of the evidence demonstrating his need for a service dog to manage his mental impairments. [Page ID: 738].

However, the only source recommending the presence of an emotional support animal was Betty Hale, a vocational consultant, who conducted a vocational evaluation of Grant. Simply, the record does not reflect any objective evidence from an acceptable medical source documenting objective evidence of the need for a service animal. Grant relies on the statements made by Betty Hale as part of her vocational evaluation conducted at the request of the ALJ. However, her report provides no diagnoses of mental conditions or impairments, and no objective findings from psychological testing to document mental impairment. As it is Grant's burden to bear both the burden of production and persuasion through step four of the sequential evaluation process, *Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 855 (6th Cir. 2010), mere conclusory statements of the need for a service animal, are insufficient to meet this obligation.

## CONCLUSION

Therefore, because the ALJ applied the appropriate standards and properly articulated his findings based upon substantial, objective evidence of record,

IT IS ORDERED that the Commissioner's motion for summary judgment, [R. 26] is GRANTED, and the plaintiff's motion for summary judgment [R. 17] is DENIED.

Signed March 9, 2020.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge